THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v. THE LIFE AND RESERVE ASSOCIATION of Buffalo, N. Y.

HERMAN WATERMAN, as Receiver of THE LIFE AND RESERVE ASSOCIATION of Buffalo, N. Y., and JOHN P. RILEY, Appellants; ELLA ROYCE and FRANK SPOONER, Respondents.

*Assessment life insurance — reserve fund and death fund — provision for the increase of the latter — who may share in the death fund — rights of different classes of certificate holders.*

The court, in dissolving a corportion and distributing its property, does so upon the basis and considerations which exist when the action is commenced, and the rights of all the parties interested are adjusted as of that date.

In an action begun to dissolve the defendant, a co-operative insurance company, and distribute its assets, a receiver was appointed and certain claims against the corporation were heard by a referee. Two of the claimants, Frank Spooner and Ella Royce, were beneficiaries under life reserve certificates, and one claimant, John P. Riley, was a beneficiary under a life certificate. It appeared that the defendant issued two kinds of certificates, one being known as a life reserve certificate and the other as a life certificate; that the life reserve certificates provided for the formation of a reserve fund while the life certificates did not that the constitution of the association created three different funds, known, respectively, as the reserve fund, the death fund and the safety fund; that the reserve fund was created by assessments levied upon the holders of life reserve certificates; that eighty-two per cent of the net death assessments levied upon all the members constituted the death fund, and that the remaining eighteen per cent was employed to create the safety fund.

It was further provided by the constitution that there should be accumulated in the death fund a permanent sum, to be obtained either from any surplus resulting after the payment of death claims, or in certain emergencies by transferring from the reserve fund a sum, whose minimum was fixed at $10,000.

It appeared that when this action was begun there were death claims of both classes of policyholders, amounting together to $48,000; that there was no death fund whatever, and that there had been no transfer made to the death fund from the reserve fund of $10,000, or of any sum whatever.

*Held,* that as the transfer of this sum of $10,000 from the reserve fund to the death fund was directed to be made by the constitution of the association in certain stated contingencies which had arisen, the court would presume that such transfer had been made and would regard such sum as being in the death fund at the commencement of the action;

That, upon the exhaustion of such sum, the court would not resume the operation, to be repeated until all the death claims were paid;

That when the transfer was made the money, passing by means of it, lost its character as constituting part of the reserve fund, became a death fund, and must be distributed *pro rata* among the death claims of both classes of certificate holders;

That the holders of life reserve certificates, and the representatives of such holders who had died, had an equitable lien upon all the reserve funds in the proportion which the amount they had contributed bore to the amount of the reserve funds left in the hands of the receiver ;

That this rule applied to the balance due upon the death claims arising out of life reserve certificates, after deducting the amount received by the holders thereof respectively, as well as to those life reserve claims upon which nothing had been paid;

That the holders of mere life certificates, or of death claims arising from such certificates, did not share in the reserve fund except to the extent of the $10,000 transferred to the death fund, and that this rule would apply to any balance due upon death claims arising from life certificates, which would receive a *pro rata* distribution of the $10,000.


Appeal by Herman Waterman, as receiver of The Life and Reserve Association of Buffalo, N. Y., from orders of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 14th day of May, 1895, by which orders the motions made by said receiver to confirm the report of a referee upon the claims of Ella Royce and Frank Spooner against the defendant were denied, the exceptions to said report filed by the said Ella Royce and Frank Spooner were sustained, and the receiver was directed to pay the said claims.

Also, an appeal by John P. Riley, as beneficiary under a life certificate issued by the defendant, from an order made at the Erie Special Term on the 22d day of July, 1895, overruling the exceptions filed by him to the report of the referee.

This action was commenced by the Attorney-General on the 23d of September, 1892, to dissolve the defendant, a co-operative insurance company, and distribute its assets. A receiver was appointed in the action, who took possession of the assets. Controversies having arisen among the different claimants to the funds and property of the corporation, the court appointed the Hon. Henry F. Allen a referee, who took proof concerning the same and made a report to this court under date of April 2, 1895. The particular claims upon which the report was made were those of Frank Spooner and Ella Royce, who were beneficiaries under certificates known as life reserve certificates held by members of the association. The two cases are exactly similar as to the questions involved, and were considered together by the referee, by the Special Term and by this court.

The company is a co-operative insurance company. It issued certificates to its members entitling them to certain rights and privileges in the corporation, the certificates being available in part during the life of the certificate holder, in case of partial or total disability, and being entirely available to the beneficiary named therein upon the death of the holder of the certificate. The constitution of the association provided for the issuing of two kinds of certificates or policies, one of which was known as a life reserve certificate and the other as a life certificate. The life reserve certificate provided, in effect, that in consideration of warranties and statements made in the application therefor, and the annual dues and all assessments to be paid at the office of the association within thirty days from notice of assessment, the holder became a member of the life and reserve association, and that the death fund of the association was set apart from assessments for the exclusive and sole purpose of paying claims arising from death or total disability.

The certificate was for $1,000, and provided that a certain reserve fund should be created which should be securely invested in United States bonds and other securities, and that after four years of continuous membership an interest-bearing bond would be issued to the holder of the certificate, for the reserve fund set apart for it. It further provided that the interest accruing on such bond was to be applied semi-annually to the payment of future assessments; that the principal was to be paid in six years, and that the certificate was

issued and accepted subject to the provisions of the constitution and by-laws of the association.

The life certificates were in the same form, excepting the provisions as to the reserve fund and the bonds that might be given therefor.

The constitution of the association created three funds, known as the death fund, the reserve fund and the safety fund. The reserve fund was created by assessments made exclusively upon the holders of life reserve certificates. The death fund was created by equal assessments upon all the members of the association, whether holding life and reserve certificates or life certificates; that is to say, by eighty-two per cent of the net avails of the death assessments; the balance, eighteen per cent, constituted the safety fund, and the constitution further provided, in providing for the creation of the death fund and for its continuance to pay death losses, that "there shall be accumulated in the death fund a permanent sum from surplus of death assessments after the payment of claims assessed for, or from transferring from the reserve fund, of not less than the proceeds of one death assessment of the maximum death claim (ten thousand dollars), which shall be invested in such security as the laws of the State permit insurance companies to invest their capital in, or deposited to the credit of the association in a bank or trust company, and which, together with all interest and accretions thereto, shall be held in trust unimpaired for the benefit of policy or certificate holders for the purpose of paying death or disability claims only."

At the commencement of this action there had accrued a number of death claims, duly proved, under life reserve certificates, amounting to about $23,000. There had also accrued death claims under life certificates to an amount exceeding $25,000. There had been no actual transfer by the officers of the association at the time of the commencement of this action from the reserve fund of an amount not less than the proceeds of one maximum death claim ($10,000), as authorized by the constitution of the association. The great bulk of the property of the association consisted of bonds, mortgages and other securities embracing the reserve fund of the association. As matter of fact, the corporation was insolvent, unable to pay the various claims upon it and fully protect the certificate holders liv-

ing and the beneficiaries of those dead, and there was no money or funds in the death fund unless the said sum of $10,000 should be regarded and treated as a part of such death fund.

The claimants, Spooner and Royce, demanded payment in full of their respective claims as being death claims due at the time the action was commenced and as entitled to be first paid out of the reserve fund. The referee reported against this claim and held that "the reserve fund should be distributed to the living members· of the association of the life and reserve class in good standing and the representatives of the deceased members of such class of like standing dying either before or after the commencement of these proceedings, in the proportion which the amounts contributed by such members thereto respectively bear to the amount of such fund left in the hands of the receiver for distribution." He further reported that the holders of death claims under the life certificates were not entitled to share in the reserve fund and based that conclusion upon the provisions of the constitution which provided as follows (Art. 2, § 3) : "No person holding a life certificate shall be entitled to, or shall in any manner derive any benefit from, the reserve fund, but such fund shall be and is for persons holding life reserve certificates only."

A motion was made at the Erie Special Term of the Supreme Court to confirm this report. Opposition was made to the confirmation by the counsel for Royce and Spooner ; opposition was also made by those holding death claims growing out of life certificates on account of the exclusion of these certificates by the referee from payment out of the reserve fund. The Special Term made an order sustaining the referee in excluding the death claims under the life certificates, but refused to confirm that portion of the report with relation to the claims of Royce and Spooner, and held that Royce and Spooner were entitled to "an equitable lien upon the reserve fund, for there was a promise and an agreement that the fund might be resorted to in certain contingencies. In the case of this claim that contingency arose ; the positive provision of the constitution that its officers should transfer to the death fund from the reserve fund sufficient to meet such claim was disregarded by the officers of that association ; it was their duty to make such transfer ; they have neglected to do so. Under the provisions of the contract and in equity, the

officers of that association should have transferred sufficient moneys from the reserve fund to meet this death claim, and the fact that the transfer was not made during the life of this association gives to the beneficiary an equitable lien upon the reserve fund now on hand, to pay the death claims," and the court ordered these claims paid in full.

The reserve fund that passed into the hands of the receiver exceeded $175,000, more than sufficient to pay all the death claims that had matured before the commencement of this action. From the order of the Special Term John P. Riley, one of the death claimants under the life certificates, appealed. The receiver was directed to appeal from the said order by the court at Special Term.

*John Cunneen,* for the receiver, appellant.

*Hamilton Ward, Jr.,* for John P. Riley, appellant.

*William E. Prentice* and *George Barker,* for the claimants, Royce and Spooner, respondents.

LEWIS, J.:

We concur with the Special Term that at the commencement of this action there should be regarded as in the death fund and as taken from the reserve fund, the amount of one maximum death assessment, being $10,000, but we do not concur with the conclusion that the claimants, Royce and Spooner, should be paid in full from the said fund to the exclusion of other death claimants, whether of the life reserve or the life class. When the $10,000 is taken from the reserve fund and becomes a part of the death fund, it ceases to have any of the qualities or attributes of a reserve fund and becomes a common fund for the payment of death claims, and under the constitution and the certificates issued by the association, all the members of the association are entitled to share equally in the death fund, whether holders of life certificates or life reserve certificates.

The corporation was dissolved by proceedings taken in this action, and the effect of that dissolution reached back to the commencement of the action, so that the functions of the corporation ceased at that time; the $10,000 should be distributed *pro rata* upon all the proved and accrued death claims existing at that time.

But one transfer of the amount of a maximum death claim from the reserve fund to the death fund can be made at a time, and when no transfer has, in fact, been made before the commencement of the action, only one is made by the application of the equity doctrine that what should be done has been done. The operation cannot be repeated after the action is commenced, to meet the balance of the death claims then unpaid, or such as might arise after that time. The court in winding up a corporation and distributing its property, does so upon the basis and considerations that exist when the action is commenced, and the rights of all the parties interested are adjusted as of that date.

The holders of life reserve certificates, and the representatives of such holders who have died; have an equitable lien upon all the reserve funds of the association in the proportion which the amounts contributed by the holders thereof respectively bear to the amount of such fund left in the hands of the receiver for distribution. This statement applies to the balance due upon the death claims arising out of life reserve certificates after deducting the amount received by the holders thereof respectively on the distribution of the said $10,000, as well as to those life reserve claims upon which nothing has been paid.

Those holding life certificates only, or death claims arising from life certificates, do not share in the reserve fund aside from the said $10,000, and this statement applies to the balance due on such death claims arising upon life certificates as will receive a *pro rata* distribution of the said $10,000.

The order of the Special Term should be modified to conform to the foregoing views, and as so modified affirmed. Costs and disbursements of the appeal should be allowed to each of the parties represented by counsel, as heretofore stated, but not more than three bills of costs and disbursements in all, which should be paid out of the funds of the association in the hands of the receiver.

BRADLEY and WARD, JJ., concurred.

Order modified, as indicated in memorandum of LEWIS, J.